UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| DT FLOORMASTERS, INC., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CASE NO. 4:07-cv-0112-DFH-WGH |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

ENTRY ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Many employers have decided to contract with outside companies to provide payroll and related services. Such relationships create new risks, as in this case. Plaintiff DT Floormasters, Inc., a California company, contracted with Innovative Personnel Solutions, Inc. ("IPS"), an Indiana payroll service company, for standard payroll services. The problem was that IPS owed the Internal Revenue Service for unpaid taxes arising from transactions having nothing to do with Floormasters. The Internal Revenue Service levied on the payroll service company's checking account, seizing funds that plaintiff Floormasters had transferred to IPS the day before to cover payroll for the employees that Floormasters had "leased" from IPS. After IPS failed to make the payroll, Floormasters paid the employees itself.

Floormasters filed this action under 26 U.S.C. § 7426, alleging that the IRS (sued in this case as the United States of America) improperly levied on funds that

actually belonged to Floormasters. Floormasters' theory is that the funds in the payroll service company's checking account were actually held in trust for Floormasters.[1] The United States contends that the funds became the property of 1st Independence Bank ("the Bank") when Floormasters wired the funds to the IPS bank account. Both Floormasters and the United States have moved for summary judgment.

As explained below, the undisputed facts show that the United States did not wrongfully levy on property belonging to Floormasters, but properly levied on property owned by the Bank and owed to IPS. Under Indiana law, the funds were not being held in trust for Floormasters. The relationship between IPS and Floormasters did not establish either an express or resulting trust, so the funds in IPS' bank account did not belong to Floormasters at the time of the levy. Money transferred by Floormasters into IPS' bank account became property of the Bank, was owed to IPS, and was properly subject to the levy to pay IPS' tax obligations. The United States' motion for summary judgment is granted, and Floormasters' motion for partial summary judgment is denied.

*Summary Judgment Standard*

---

[1] Floormasters appears to have a strong breach of contract claim against IPS, which might or might not be worth suing. This case deals with two relatively innocent parties, where the issue is how some of the risk of loss from IPS' failure to pay its obligations should be allocated between the United States and Floormasters.

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment must be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The motion should be granted so long as no rational fact finder could return a verdict in favor of the non-moving party. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In a court's ruling on a motion for summary judgment, the question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. Only genuine disputes over material facts can prevent a grant of summary judgment. *Id.* at 247-48.

When deciding a motion for summary judgment, the court considers those facts that are undisputed and views additional evidence, and all reasonable inferences drawn therefrom, in the light reasonably most favorable to the non-moving party. See Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 255. A party must present more than mere speculation or conjecture to defeat a summary judgment motion. The issue is whether a reasonable trier of fact might rule in favor of the non-moving party based on the evidence in the record. *Anderson*, 477 U.S. at 251-52.

The fact that both sides have filed motions for summary judgment does not alter the applicable standard; the court must consider each motion independently and must deny both motions if there is a genuine issue of material fact. *E.g.*, *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993); *Harms v. Laboratory Corp. of America*, 155 F. Supp. 2d 891, 905-06 (N.D. Ill. 2001). Thus, in considering cross-motions for summary judgment, the court must consider the evidence through two lenses. When considering Floormasters' motion for partial summary judgment, the court must give the United States the benefit of all conflicts in the evidence and the benefit of all reasonable inferences that might be drawn from the evidence in its favor. When considering the United States' motion for summary judgment, the roles are reversed.

*Facts for Summary Judgment*

I.  *Service Agreement*

Floormasters sells and installs commercial flooring in California. Lau Aff. ¶ 3. On May 13, 2002, Floormasters entered into a Service Agreement with IPS, an Indiana company. Lau Aff. ¶ 4. IPS leased employees to Floormasters for its California operations. Pursuant to the Service Agreement, IPS paid the leased employees' wages, all employer taxes, federal, state, and local employee withholding taxes, worker's compensation insurance, medical insurance, vacation pay, and benefits. Lau Aff. ¶ 5. For each weekly pay period, Floormasters reported to IPS the applicable payment information for the employees. *Id.* IPS

sent an invoice to Floormasters for the gross wages, plus an additional variable cost factor that included the costs of taxes, insurance, benefit payments, and IPS' one-percent service fee. Lau Aff. ¶¶ 8, 9. Before IPS issued payroll checks and direct deposits, Floormasters wire-transferred funds for the invoiced amounts to IPS' account at 1st Independence Bank. Lau Aff. ¶ 10, Ex. A. After IPS sent the payroll checks by overnight mail to Floormasters, Floormasters distributed the checks to the employees in California. Lau Aff. ¶ 12.

II.   *The IRS Levy*

On July 21, 2005, Floormasters transferred $105,233.56 to IPS' account for the payroll to be distributed on Friday, July 22, 2005. Def. Mem. 2. On July 22, 2005, the IRS served a Notice of Levy on 1st Independence Bank requiring the Bank to hold funds in all of IPS' accounts for taxes that IPS owed to the IRS. Rose Decl., Ex. C; Luetzelschwab Decl., Ex. D. Before the levy, the Bank had already made direct deposits totaling $16,332.50 to Floormasters' employees for the July 22 payroll. Lau Aff. ¶ 15, Ex. C. A total of $91,095.77 in payroll obligations to the employees Floormasters leased remained unpaid after the Notice of Levy was issued, Lau Aff. ¶¶ 18, 22, including $3,145.36 that was in the account from uncashed payroll checks from previous pay periods. Lau Aff. ¶ 16. On July 26, 2005, Donald Briscoe, president of IPS, authorized the Bank to release $292,956.87 to the IRS accumulated from all of IPS' accounts, which the Bank did on July 29, 2005. Rose Decl., Ex. D, Ex. E. Floormasters chose to pay

$108,240.39 to another payroll service to pay those employees who remained unpaid after the levy was placed on the funds in IPS' account. Lau Aff. ¶ 17.

III.     *Floormasters' Wrongful Levy Claim*

On April 17, 2006, Floormasters filed an administrative claim requesting the return of wrongfully levied property pursuant to 26 U.S.C. § 7426. Kirkgaard Decl., Ex. A. In the claim, Floormasters argued that the funds in IPS' bank account were the property of Floormasters and its employees and not IPS, so the funds should be returned to Floormasters. *Id.* The IRS disallowed the claim on January 18, 2007, saying that Floormasters had failed to establish that the seized money was its property. Kirkgaard Decl., Ex. C. Additional facts are noted below as needed, keeping in mind the standard for summary judgment.

*Discussion*

The United States is allowed to levy on (or seize) a delinquent taxpayer's property to satisfy an outstanding tax debt, 26 U.S.C. § 6331, but it may not levy on or seize property belonging to "any person (other than the person against whom is assessed the tax out of which such levy arose)" who has an interest in or lien on the seized property. 26 U.S.C. § 7426. The issue in this case is whether the funds in IPS' account at 1st Independence Bank on July 22, 2005 were the property of the Bank or Floormasters. (Neither party contends that the funds belonged to IPS at the time of the levy.) For the funds to have belonged to

Floormasters, they must have been held in trust by IPS (and the Bank) for Floormasters. The controlling issue is whether the funds were held in either an express trust or a resulting trust. If the funds were held in an express or resulting trust, the funds were Floormasters' property at the time of the levy and the levy was unlawful. If the funds were not held in trust but were owned by the Bank and owed to IPS, then Floormasters had no right to them and the levy was proper.

I.      *Governing Legal Principles*

The Federal Tax Lien Act of 1966 established a lien that attaches to "all property and rights to property, whether real or personal" owned by a delinquent taxpayer. 26 U.S.C. § 6321; *United States v. Swan*, 467 F.3d 655, 656 (7th Cir. 2006); *Storage and Office Systems, LLC v. United States*, 490 F. Supp. 2d 955, 959 (S.D. Ind. 2007). Persons other than the taxpayer may bring wrongful levy actions pursuant to § 7426. In relevant part, § 7426(a)(1) provides that "any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States." To prove its wrongful levy claim, Floormasters must show that it had a legally recognized interest, as distinct from an ordinary commercial debtor-creditor relationship, in the IPS account funds.[2]

---

[2]Twice the Seventh Circuit has dismissed claims with nearly identical facts for lack of subject matter jurisdiction, but the cases are distinguishable. In both *Amwest Surety Ins. Co. v. United States*, 28 F.3d 690 (7th Cir. 1994), and
(continued...)

In the context of federal tax liens, federal courts "look to state law for delineation of the taxpayer's rights or interests." *Drye v. United States*, 528 U.S. 49, 52 (1999); *United States v. National Bank of Commerce*, 472 U.S. 713, 722 (1985) (applying Arkansas law to determine whether IRS had properly levied on funds in joint accounts where the delinquent taxpayer was allowed an absolute right to withdraw from the accounts). In this case, the parties agree that whether the funds in IPS' account in an Indiana bank were held in trust for Floormasters is governed by Indiana law. Federal law then determines whether the taxpayer's rights or interests constitute property under a federal revenue act. *National Bank of Commerce*, 472 U.S. at 722.

---

[2](…continued)

*LaBonte v. United States*, 233 F.3d 1049 (7th Cir. 2000), the Seventh Circuit found that the claimant seeking the return of wrongfully levied property under § 7426 had not filed an action within the limitations period specified in 26 U.S.C. § 6532(c)(1), and the limited extension period in § 6532(c)(2) did not apply. In those cases, because the claimants' requests for return of property were not addressed to the IRS district directors as required by 26 C.F.R. § 301.6343-2 (as amended in 1995), the resulting applications were improper and untimely, leading the United States to assert its sovereign immunity, thus depriving the courts of subject matter jurisdiction over those claims. Floormasters also did not address its request for return of property to the IRS district director, but in both *Amwest Surety* and *LaBonte*, the levies and seizures of funds occurred prior to 1998. After 1998, in response to the IRS Restructuring and Reform Act of 1998, Pub. L. No. 105-206, 112 Stat. 685 (1998), the IRS reorganized and eliminated the district director offices. See T.D. 9344. 2007-36 I.R.B. As a result of the restructuring, there was the potential for the misdirection of requests, so the IRS developed a new regulation, Temp. Treas. Reg. § 301.6343-2 (2007), referring claimants to the relevant IRS publications for information on where to send notices or claims. The new regulation is not retroactive. However, because the district director position no longer existed when the IRS levied on IPS' account, it would be Kafkaesque to require Floormasters to have sent its request to the non-existent district director as a condition of subject matter jurisdiction. Floormasters filed its request within the nine month period specified in § 6532(c)(1), so the limited extension period of twelve months from the date of the levy applies to the filing of this lawsuit.

II.     *No Express Trust*

"A trust is a fiduciary relationship between a person who, as trustee, holds title to property and another person for whom, as beneficiary, the title is held." Ind. Code § 30-4-1-1(a). The defining feature of any trust is the relationship between the two parties, where one party as trustee is responsible for administering the trust and the other as beneficiary receives the proceeds of the trust. The Seventh Circuit has defined a fiduciary relationship as one where there is "a difference in knowledge or power between fiduciary and principal which . . . gives the former a position of ascendancy over the latter." *In re Marchiando*, 13 F.3d 1111, 1116 (7th Cir. 1994) (owner of convenience store was not holding lottery sales receipts in fiduciary capacity within meaning of 11 U.S.C. § 523(a)(4), so owner's debt to state lottery was dischargeable).

Under Indiana law, "the term 'express trust' signifies a trust created by the direct and positive acts of the parties as evidenced by some deed, will, or other instrument, wherein the language employed either expressly or by plain implication evinces an intention to create a trust." *Ross v. Thompson*, 146 N.E.2d 259, 261 (Ind. App. 1957), quoting *Holsapple v. Schrontz*, 117 N.E. 547, 549 (Ind. App. 1917). Applying Indiana law, the court in *Judd v. First Federal Savings and Loan Ass'n of Indianapolis*, 710 F.2d 1237, 1241 (7th Cir. 1983), held that mortgages containing the words "trust," "trustee," and "in trust" were not express

-9-

trusts because those words did not change a traditional debtor-creditor relationship into a fiduciary one. The Service Agreement between Floormasters and IPS did not contain any language expressly creating a trust or transforming the traditional debtor-creditor relationship into a fiduciary relationship.

However the Seventh Circuit in *Judd* explained that, "the words used in a document are not always conclusive evidence of a trust. The principal consideration is intent." 710 F.2d at 1241; see also *Citizens' Loan & Trust Co. v. Herron*, 115 N.E. 941, 942-43 (Ind. 1917) ("[I]t is sufficient if any intention to create a trust and the subject-matter, purpose, and beneficiary are stated with reasonable certainty. Indeed, the use or nonuse of the technical words 'trust' and 'trustee' is not controlling."). Applying these principles, the Service Agreement between Floormasters and IPS still did not show sufficient intent to create an express trust. Section 6.1 of the Agreement indicated an intention to create an equal relationship between the parties: "IPS shall be an independent contractor of Customer and shall not be its principal, director, agent, master, servant, employer or employee." This language did not indicate an intent to create a relationship where one party is in a position of ascendancy over the other. It created a relationship where both parties were on equal footing. IPS could have designated the account a trust pursuant to a separate agreement because the choice of creating a trust was present on the signature card form for the account. See Luetzelschwab Decl., Ex. A. IPS' signature card identified the account as a for-profit corporate account belonging to IPS, not a trust. *Id.*

To argue that there was an express trust between Floormasters and IPS, Floormasters relies on *Beck v. General Accident Ins.*, 114 B.R. 168 (S.D. Ind. 1990). In *Beck*, an insurance broker failed to forward to the insurance company premiums that it had agreed to collect on the insurance company's behalf. *Id.* at 170. The court found that an express trust and fiduciary relationship existed between the two parties as a result of a written agreement that "clearly demonstrate[d] the parties' intent to create a trust." *Id.* at 171. The agreement in that case stated that the broker had a duty to "collect and receipt for, hold as *fiduciary*, and pay over" premiums to the insurance company. *Id.* at 170 (emphasis added). Accordingly, the premiums deposited in the broker's bank account were the property of the insurance company and were not available to other creditors.[3]

In some respects, the relationship between the broker and the insurance company in *Beck* was similar to the relationship between IPS and Floormasters. Both the broker and IPS transferred funds between two different parties. For example, IPS paid employees from funds that were deposited into its account by Floormasters, and the insurance broker paid insurance premiums to the insurance company from funds that were placed in its account by policyholders. *Id.* at 172. However, Floormasters' reliance on this case is not persuasive. The Service Agreement between Floormasters and IPS did not contain any language

---

[3]The court in *Beck* held that the only funds in the account that were held in trust were those paid by policyholders for premiums. *Beck*, 114 B.R. at 172. Other funds in the account, such as loan proceeds, were not trust funds. *Id.*

reflecting an intention to impose fiduciary duties on IPS. There was no language like the "collect and receipt for, hold as fiduciary, and pay over" clause in *Beck*. The Service Agreement did not create an express trust.

III.    *Payroll Account as a Resulting Trust*

Indiana courts have not addressed whether and under what circumstances a payroll account could be considered a trust. The Fifth Circuit, however, has addressed the issue. In *In re Goodson Steel Corp.*, 488 F.2d 776, 778 (5th Cir. 1974), funds from an account labeled "Payroll Account" were used to pay employee payroll, withholding, and FICA taxes. The trustee in bankruptcy for Goodson Steel Corporation claimed that the account was used only for payroll-related purposes only and should be considered a trust between the bank and Goodson's employees to pay payroll-related debts or an account with special restrictions limiting the ability of the funds to be used by the bank to set off a past due promissory note. *Id.* at 778-79. Despite the account's designation as a payroll account, the company was free to withdraw all or any of the funds at any time and for any purpose. *Id.* at 778. Because there were no formal restrictions placed on the account's function or funds, the court found that the payroll account was not a trust between the bank and Goodson's employees nor another form of special account. Instead, the account was a general checking account

available to general creditors during bankruptcy, allowing the bank the right to set off the amount of the promissory note. *Id.* at 779-80.[4]

A similar set of facts appears in this case though Floormasters argues that IPS' rights to use, transfer, and dispose of the funds in the payroll account were limited by the terms of the Agreement. The IPS bank account into which Floormasters deposited funds was identified in the Bank's records as "payroll" in the account owner name and address section of the signature card. Luetzelschwab Decl., Ex. A. This does not appear to be an official designation, and there is no evidence that it had any effect on the account's function. The bank statement classified the account as a "Free 'B' Checking" account. Luetzelschwab Decl., Ex. B. Like the funds in the account in *Goodson Steel*, the funds in the IPS account could be moved in and out of the account at any time for any reason. Those facts are not consistent with any form of a trust.

---

[4]The Fifth Circuit remanded *Goodson Steel* even though the account was neither a special account nor the result of a trust relationship. 488 F.2d at 781. The bank was entitled to set off the entire amount in the account unless Goodson's check, which was drawn on the account prior to the set off, was presented for payment before the bank's set off occurred. *Id.* Similarly, IPS' checks for the employees leased by Floormasters were drawn on the account prior to the Notice of Levy, but it is likely that these checks could not have been presented for payment on the account until after the Bank held the funds. The IRS issued the levy and the Bank held the funds on the same day that Floormasters distributed the checks to the employees. IPS' July 29, 2005 bank statement showed no returned items on July 22, 2005. Luetzelschwab, Decl. Ex. B.

Floormasters argues in the alternative that there was a resulting trust between Floormasters and IPS. A resulting trust is an equitable remedy imposed to do justice. *Criss v. Bitzegaio*, 420 N.E.2d 1221, 1224 (Ind. 1981); *Chosnek v. Rolley*, 688 N.E.2d. 202, 211 (Ind. App. 1997); *Estate of Hann v. Hann*, 614 N.E.2d 973, 978 (Ind. App. 1993). The Indiana Court of Appeals has defined a resulting trust as follows:

> A resulting trust arises where a person makes or causes to be made a disposition of property under circumstances which raise an inference that he does not intend that the person taking or holding the property should have the beneficial interest therein, unless the inference is rebutted or the beneficial interest is otherwise effectively disposed of.

*Chosnek*, 688 N.E.2d at 211, quoting Restatement (Second) of Trusts § 404 (1959). A resulting trust is created based on the "presumed intentions of the parties." *Hann*, 614 N.E.2d at 978, citing *Emberry Community Church v. Bloomington Dist. Missionary and Church Extension Society, Inc.*, 482 N.E.2d 288, 293 (Ind. App. 1985).

For example, a resulting trust can be formed if the parties intended to establish a joint bank account but failed to do so. *Hann,* 614 N.E.2d at 978 (finding a resulting trust when two individuals contributed funds to a joint checking account and intended to own a joint savings account for both of their funds, but only one name appeared on the savings account). There is no indication that Floormasters and IPS intended to establish a joint account. IPS was the sole owner listed for the account. See Luetzelschwab Decl., Ex. A. IPS

had the unqualified right to withdraw the full amount on deposit in the account for any purpose.

Floormasters argues that IPS' account was merely "a channel through which money paid by Floormasters would flow" and that it did not intend for IPS to have a beneficial interest to the funds in the account. But there is no evidence of a relationship other than an ordinary contractual one between the two companies. The Service Agreement made clear that Floormasters was leasing employees from IPS. Ex. A ¶¶ A-C. Floormasters deposited funds into IPS' account to pay IPS employees who were "leased" to Floormasters. Ex. A ¶ 3.2. Nor were these funds held in trust by IPS for its employees. Section 6.2 of the Service Agreement, entitled "Third Party Beneficiaries," stated that "the parties acknowledge and agree that no parties other than the parties hereto are intended to benefit hereunder."

To argue that IPS was holding funds in trust for it, Floormasters relies on *Peoples State Bank v. Caterpillar Tractor Co.*, 12 N.E.2d 123 (Ind. 1938). In that case, the Indiana Supreme Court determined that until a bank exercised its right of set-off, it was not allowed to withhold payment of funds that were held in trust prior to the set-off. *Id.* at 126. Caterpillar Tractor Company had delivered a tractor to a tractor dealer for resale to a third party. The tractor was delivered pursuant to a conditional agreement where the dealer provided a note to Caterpillar for the wholesale price. *Id.* at 124. The dealer sold the tractor and deposited the third party's payment into its account, out of which Caterpillar was

-15-

to collect its payment for the tractor. *Id.* at 125. The dealer had a past-due note with the bank that the bank collected from the dealer's account using its right of set-off. *Id.* at 124-25. On the same day, Caterpillar cashed a check drawn on the dealer's account in a lesser amount from a different transaction. *Id.* at 125. These two transactions left the account with insufficient funds for the dealer's payment to Caterpillar for the first tractor. *Id.* The court held that funds in the amount owed to Caterpillar for the tractor were held in trust by the dealer. *Id.* at 126. Still, the court reversed the previous judgment that was in favor of Caterpillar and ordered a new trial to determine which occurred first, the bank's set off or Caterpillar's cashing of the check from the other transaction. *Id.* at 127. "The rights of the parties . . . must be determined as of the time when the appellant [bank] elected to exercise its right to set-off." *Id.* at 126. The decision in *Caterpillar* required a determination of whether the set-off occurred before the check was cashed. If the set-off was first, Caterpillar was entitled to collect only what remained of the trust amount. If the check was cashed first, Caterpillar could collect the full amount of the set-off.

The *Caterpillar* opinion is rather opaque and appears to have assumed the answer to the question in dispute here – whether a portion of the funds in the account belonged to a creditor of the account holder. The court in that case used the language of a trust but did not provide further explanation or definition. Thus, the case does not provide support for the argument that the relationship

-16-

between Floormasters and IPS created a trust rather than an ordinary commercial contractual relationship.

Once Floormasters transferred the funds to the IPS bank account, those funds were subject to the tax levy based on IPS' obligations. In Indiana, the long-standing common law regarding a bank's right to set-off is that "[m]oney deposited in a general account becomes the property of the bank; the depositor becomes the bank's creditor to the extent of the deposit." *Citizens National Bank of Whitley County v. Mid-States Dev. Co.*, 380 N.E.2d 1243, 1248 (Ind. App. 1978), citing *Bedford Bank v. Acoam*, 25 N.E. 713, 713 (Ind. 1890); see also *Ogle v. Barker*, 68 N.E.2d 550, 556 (Ind. 1946), overruled on other grounds by *Nelson v. Parker*, 687 N.E.2d 187, 189 (Ind. 1997); *First National Bank, Martinsville v. American Fletcher National Bank & Trust Co.*, 480 N.E.2d 964, 968 (Ind. App. 1985) (bank had a right to set-off funds in an account against the balance of a loan owed by decedent).[5] A bank's financial obligation to its depositor can be counterbalanced by a debt the depositor owes to the bank. *First Bank of Whiting v. Samocki Bros. Trucking Co.*, 509 N.E.2d 187, 198 (Ind. App. 1987). These same principles extend to the United States when the IRS levies on a delinquent taxpayer's property. It

---

[5]As in Indiana, "general deposits give rise to a debtor-creditor relationship between the bank and the depositor" under Illinois law. *Schuppert v. United States*, 976 F. Supp. 781, 784 (C.D. Ill.1997), quoting *Seaway National Bank v. Cain*, 629 N.E.2d 660, 665 (Ill. App. 1994). Judge Mills has taken this concept a step further in relation to wrongful levy claims: "A general creditor's 'mere claim of a contractual right to be paid, unsecured by a lien or other specifically enforceable property interest,' is not an adequate interest in property to confer standing under § 7426." *Schuppert*, 976 F. Supp. at 784, quoting *Aspinall v. United States*, 984 F.2d 355, 358 (10th Cir. 1993).

is well established that a bank account is property subject to levy under 26 U.S.C. §§ 6331 and 6332. *National Bank of Commerce*, 472 U.S. at 721. The Bank was required to place a hold on funds in the IPS account, and funds credited to IPS were then owed to IPS by the Bank. Because no trust existed between IPS and Floormasters, the IRS could properly levy on the funds in the account to pay IPS' tax obligations.

IV.  *Section 4.3 of Service Agreement*

Finally, Floormasters argues that Section 4.3 of the Service Agreement barred IPS from withholding payment from the leased employees because the employees had not consented to the withholding. Section 4.3 provided:

> Neither party shall make or effect any deduction or withholding from the pay of any employee leased hereunder except for deduction or withholdings required or permitted by law and except for any deduction or withholding to which the employee consents by a signed writing which specifies the reason for, date of, and amount of such deduction or withholding. This provision shall not apply to any applicable per diem related adjustments.

In this case, IPS did not withhold or deduct anything from any employee's pay. It simply failed to pay a debt.[6]

*Conclusion*

The undisputed facts show that the funds in IPS' account were not held in trust for Floormasters or its leased employees. When the IRS served its Notice of Levy, the funds belonged to the Bank, were owed to IPS, and thus were subject to levy to pay IPS' tax obligations. The United States' motion for summary judgment is granted, and Floormasters' motion for partial summary judgment is denied. Final judgment shall be entered in favor of the United States.

---

[6] Pursuant to 26 U.S.C. § 7430, Floormasters seeks costs and attorney fees. Floormasters is not a prevailing party and therefore is not entitled to costs or fees under § 7430.

So ordered.

Date: July 10, 2008

                                            DAVID F. HAMILTON, JUDGE
                                            United States District Court
                                            Southern District of Indiana

Copies to:

Donald F. Foley
FOLEY & TURNER
donf@foleyandturner.com

Dana L. Luetzelschwab
FOLEY & TURNER
danal@foleyandturner.com

Thomas Moore
U. S. ATTORNEY'S OFFICE
450 Golden Gate Avenue, 10th Floor
Box 36055
San Francisco, CA 94102

Douglas William Snoeyenbos
DEPARTMENT OF JUSTICE, TAX DIVISION
douglas.w.snoeyenbos@usdoj.gov